## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANGELA BRUNSON,** | |
| **Plaintiff,** | |
| **v.** | **Case No.  1:24-cv-03382-RDM** |
| **FRANCES HOM, et al.,** | |
| **Defendants.** | |

## DEFENDANT DISTRICT OF COLUMBIA'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant District of Columbia moves under Rule 12(b)(1) and (6) to dismiss Plaintiff's

Complaint [1].  The grounds supporting dismissal are set forth in Defendant's Memorandum of

Points and Authorities. LCvR 7(a).  A proposed order is also included.  LCvR 7(c).  Because this

Motion is dispositive, Defendant did not seek Plaintiff's consent.  *See* LCvR 7(m).

Date: April 1, 2025.                    Respectfully submitted,

                                        BRIAN L. SCHWALB
                                        Attorney General for the District of Columbia

                                        CHAD COPELAND
                                        Deputy Attorney General
                                        Civil Litigation Division

                                        */s/ Matthew R. Blecher*
                                        MATTHEW R. BLECHER [1012957]
                                        Chief, Equity Section, Civil Litigation Division

                                        */s/ Honey Morton*
                                        HONEY MORTON [1019878]
                                        Assistant Chief, Equity Section

                                        */s/ Julie Tolmie*
                                        JULIE TOLMIE*

Assistant Attorney General
Equity Section, Civil Litigation Division
400 6th Street, N.W.
Washington, D.C. 20001
Phone: (202) 285-2167
Email: julie.tolmie@dc.gov

*Counsel for Defendant*

*Counsel is a member in good standing of the
Oregon State Bar, authorized by the Office of
the Attorney General for the District of
Columbia to provide legal services pursuant to
Local Civil Rule 83.2(g).  Counsel certifies that
she is personally familiar with the Local Rules
of this Court as well as the other materials set
forth in Local Civil Rules 83.8(b) and 83.9(a).

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on April 2, 2025, a representative from my office will serve a copy of this

Motion and all accompanying papers via email to Plaintiff at AngelaBrunson41@gmail.com.

Plaintiff indicated in earlier correspondence that she receives electronic filing notices from the

Court but would appreciate courtesy copies of Defendant's filings sent to her at the above-listed

email address.  *See* LCvR 5.4(d)(2).


*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Equity Section, Civil Litigation Division

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ANGELA BRUNSON,** | |
| **Plaintiff,** | |
| **v.** | **Case No.  1:24-cv-03382-RDM** |
| **FRANCES HOM, et al.,** | |
| **Defendants.** | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

LEGAL STANDARD..........................................................................................................4

I.      Rule 12(b)(1)..........................................................................................................4

II.     Rule 12(b)(6)..........................................................................................................5

ARGUMENT .......................................................................................................................5

I.      The Court Lacks Jurisdiction .................................................................................5

        A. *Rooker-Feldman* Bars Plaintiff's Claims.......................................................5

        B.  Plaintiff Does Not Have Standing To Sue on Her Uncle's Behalf...............7

II.     The Complaint Fails To State a Claim...................................................................10

        A.  Plaintiff Does Not Plead a Plausible Basis for *Monell* Liability ................10

        B.  Plaintiff's Constitutional Claims Fail on the Merits ...................................12

            1.   The Procedural Due Process Claim Fails.............................................12

            2.   The Substantive Due Process Claim Fails ...........................................13

            3.   The Equal Protection Claim Fails ........................................................15

CONCLUSION...................................................................................................................15

**TABLE OF AUTHORITIES**

*3883 Conn. LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003) ........................15

*Ananiev v. Freitas*, 37 F. Supp. 3d 297, 312 (D.D.C. 2014)...........................................................6

*Arntz v. Smith*, 1994 WL 474998, at *1–2 (D.C. Cir., July 1, 1994)..............................................11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ..................................................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ..............................................................5, 14

*Bronner on behalf of Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020)..................4

*Coleman v. Toyota Motor Credit Corp.*, 109 F. Supp. 3d 4, 6 (D.D.C. 2015) ...............................5

*Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) .......................................................14

*County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).........................................................13

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983)...............................................6

*Doe by Fein v. District of Columbia*, 93 F.3d 861, 869 (D.C. Cir. 1996) .....................................12

*Est. of Boyland v. USDA*, 913 F.3d 117, 123 (D.C. Cir. 2019) .....................................................5

*Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018)..................................................................5

*Fleming v. U.S.*, 847 F. Supp. 170, 172 (D.D.C. 1994) .................................................................6

*George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 206 (D.C. Cir. 2003) .....................13

*Givens v. Bowser*, 111 F.4[th] 117, 122 (D.C. Cir. 2024) ............................................................10

*Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017) .................5, 9

*Henneghan v. Trafford*, 2024 WL 3471260, at *5–6 (D.D.C., July 18, 2024)................................6

*Hernandez v. Banks*, 65 A.3d 59, 67–68 (D.C. 2013) .................................................................10

*Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 998 (8th Cir. 2016)....................................9

*Kirtley v. Rainey*, 326 F.3d 1088, 1096 (9th Cir. 2003) ..............................................................10

*Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004) ........................................................................8

*L.S. v. D.C. Dep't on Disability Servs.*, 285 A.2d 165, 171 (D.C. 2022) ........................................8

*Lance v. Dennis*, 546 U.S. 459, 460 (2006)..................................................................................6

*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)....................................10

*Moorman v. U.S. Bank, NA*, 2010 WL 2884661, at *1 (D.D.C., July 10, 2010)............................6

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ........................................12

*Polk County v. Dodson*, 454 U.S. 312, 326 (1981).......................................................................11

*Powers v. Ohio*, 499 U.S. 400, 411 (1991) ...................................................................................9

*Rowland v. Superior Ct. Bldg. B*, 2014 WL 1321106, at *1 (D.D.C., Mar. 20, 2014)...................6

*Schroeder v. New York*, 371 U.S. 208, 212–213 (1962)...............................................................12

*Scully v. Goldenson*, 751 Fed. App'x 905, 908 (7th Cir. 2018) ................................................6, 8

*Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993)..............................................................11

*Tate v. District of Columbia*, 627 F.3d 904, 910 (D.C. Cir. 2010)...............................................15

*Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183 (D.C. Cir. 2006) .........................................5

*Veg-Mix, Inc. v. U.S. Dep't of Agric.*, 832 F.2d 601, 607 (D.C. Cir. 1987) ..................................2

*Willowbrook v. Olech*, 528 U.S. 562, 563–64 (2000)...................................................................15

## INTRODUCTION

In February 2021, a Superior Court judge determined that Plaintiff's elderly uncle was incapacitated and appointed a general guardian to manage his affairs.  According to Plaintiff, she was not aware of the guardianship order—or her uncle's whereabouts—until "around 2022," the year he settled a relatively high-profile personal injury suit against the property manager for the nursing home where he lived until it was destroyed by a fire.  Prior to then, according to Plaintiff, she had not had any contact with her uncle for almost four years; since then, however, she has taken an interest in his well-being and has developed concerns over the status of his guardianship.  Those concerns are the gravamen of this civil action.  In a nutshell, Plaintiff contends that her uncle is not receiving adequate medical or dental care, that his "wishes" are not being respected, and that his affairs are not well managed.  She brought these concerns to the Superior Court in July 2023, but that court rejected her request to terminate her uncle's guardianship after a full opportunity for briefing and two evidentiary hearings.  So, she appealed to the District of Columbia Court of Appeals, which affirmed the lower court's decision in November 2024.  Still unsatisfied, Plaintiff now brings three constitutional claims for damages and other relief under 42 U.S.C. § 1983 against the guardian individually and the District of Columbia (District).

Unfortunately for Plaintiff, her Complaint suffers from an array of jurisdictional and other defects that require dismissal pursuant to Rule 12(b)(1) and (6).  Most notably, federal courts like this one lack subject matter jurisdiction over claims that conflict with final state court judgments on matters of guardianship.  The *Rooker-Feldman* doctrine bars those claims—and thus Plaintiff's claims here—so long as they are related to (intertwined with) the state court judgment.  Even if that were not the case, Plaintiff would not have standing to sue on her uncle's

behalf, either because District guardianship law forecloses that possibility or because she cannot meet the stringent standard for third-party standing. And, even if (or to the extent that) the Court assumes jurisdiction, Plaintiff's constitutional claims have a host of problems. For one, Plaintiff does not plead a colorable basis for *Monell* liability. Even if she did, she would have no predicate constitutional claim: She was not entitled to more process than was available to her under local law to challenge her uncle's guardianship; nothing about the government's conduct vis-à-vis Plaintiff or her uncle was shocking in a constitutional sense; and there is no factual matter in the Complaint to suggest Plaintiff or her uncle were subject to intentional differential treatment in violation of the Equal Protect Clause. For these reasons, the Court should dismiss the Complaint.

## BACKGROUND

The following facts are gleaned from the Complaint and documents subject to judicial notice.[1] Angela Brunson—*pro se* Plaintiff in this action—is the niece of Raymond Holton. Compl. ¶ 7. In September 2018, Holton, then 74 years old, was a resident of the Arthur Capper Senior Public Housing complex and was trapped in the building when it caught fire. Compl. ¶ 10.[2] After receiving acute care for his injuries, Holton was transferred to a nursing facility for long-term rehabilitative care. *Id*. In March 2019, Holton assigned power of attorney for himself

---

[1]    The Court can take judicial notice of court records. *Veg-Mix, Inc. v. U.S. Dep't of Agric.*, 832 F.2d 601, 607 (D.C. Cir. 1987). All court filings cited below have been compiled and organized chronologically in the tabbed PDF file included as an attachment to this Motion.

[2]    Holton received local media attention after being discovered locked inside the burned-out structure five days after residents were evacuated. *E.g.*, Dina Kesbeh, Senior Resident Found Alive in D.C. Apartment 5 Days After Fire, NPR (Sept. 25, 2018), available at https://www.npr.org/2018/09/25/651352033/senior-resident-found-alive-in-d-c-apartment-5-days-after-fire (last visited April 1, 2025).

to an individual named Hattie White, who later that year filed a personal injury suit in this Court through counsel on Holton's behalf against the managers of the Arthur Capper complex.  Compl. ¶¶ 10–11; Mot. for Leave to Substitute Party [34], No. 1:19-cv-02508-JEB (D.D.C., Mar. 18, 2021).  In February 2021, on petition filed by Holton's counsel, the Superior Court (M. Ross, J.) appointed a general guardian for Holton—Frances Hom, Defendant here—and extinguished Ms. White's power of attorney.  Compl. ¶¶ 12, 14; Findings of Fact, Conclusions of Law and Order, 2020 INT 000325 (D.C. Super., Feb. 2, 2021) (Guardianship Order) at 7 ("The current power of attorney for the ward is hereby vacated."); *accord* Mot. for Leave to Substitute Party, *supra*. Several of Holton's family members received notice of the guardianship order, Guardianship Order at 7 (Sylvia and Alonzo Holton), and one was present, *id.* at 6 (Sylvia Holton); but Plaintiff was apparently not among them, Compl. ¶ 14 ("without any notice to our family").

Holton's personal injury suit resolved by settlement in August 2022.  Order [64], No. 1:19-cv-02508-JEB (D.D.C., Aug. 22, 2022).  Around that time, Plaintiff apparently "f[ou]nd [her] uncle's whereabouts," Compl. ¶ 15, and began taking an interest in his care, *e.g.*, Compl. ¶¶ 16, 18, 23–24.  According to Plaintiff, Holton was not receiving adequate medical or dental treatment, and his affairs were being mismanaged.  Compl. ¶¶ 18, 56–57.  Plaintiff faulted (and continues to fault) Ms. Hom, who has secured "a series of orders" from the Superior Court restricting Plaintiff's access to Holton.  Compl. ¶¶ 23, 58 (and accompanying fn.).  This, Plaintiff contends, is contrary to Holton's wishes, which Plaintiff summarizes as "be[ing] surrounded by family . . . [and] a dog" and having Hom removed.  Compl. ¶ 51.

In July 2023, Plaintiff filed an emergency petition to remove Hom as Holton's guardian, alleging delay in Holton receiving dental and medical care and mismanagement of his financial affairs.  Emergency Pet. to Remove Guardian, 2020 INT 000325 (D.C. Super. Ct., July 21, 2023)

3

(Removal Petition).  Following briefing and argument, the Superior Court (McClean, J.) denied

the petition on October 2023.  Order Regarding Pending Motions, 2020 INT 000325 (D.C.

Super. Ct., Oct. 5, 2023) (Removal Order).  Plaintiff appealed that decision to the D.C. Court of

Appeals (DCCA), which affirmed the Superior Court's judgment in a November 2024 opinion.

Mem. Opinion and Judgment, 23-PR-0920 (D.C., Nov. 20, 2024) (DCCA Order).  Finding no

abuse of discretion, the DCCA reasoned that the record did not support Plaintiff's theory of

neglect or financial exploitation.  DCCA Order at 2–3.

One month later, Plaintiff brought this lawsuit.  Here, citing the same concerns over her

uncle's well-being, Plaintiff contends that Hom and the District—through unidentified "District

officials," *e.g.*, Compl. ¶¶ 53, 63, 75, 77–78—violated her and Holton's rights to procedural and

substantive due process and equal protection of law.  Compl. at 4–9.  Plaintiff purports to sue on

her uncle's behalf, invoking third-party standing doctrine, as his "close" relative and alleged

"durable Power of Attorney."  Compl. ¶¶ 44, 68, 75.  She seeks an award of compensatory and

punitive damages and an injunction terminating Holton's guardianship and requiring the

reformation of District policy governing guardianship proceedings.  Compl. at 9.

## LEGAL STANDARD

### I.  Rule 12(b)(1)

To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing

jurisdiction.  *Bronner on behalf of Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 602 (D.C. Cir.

2020).  This burden includes establishing the threshold elements of Article III standing.  *Est. of*

*Boyland v. USDA*, 913 F.3d 117, 123 (D.C. Cir. 2019).  Generally, when entertaining a motion

under Rule 12(b)(1), courts accept "well-pled factual allegations" while "disregard[ing] any legal

conclusions, legal contentions couched as factual allegations, and unsupported factual

allegations." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017).

If, however, the defendant disputes the complaint's factual allegations, "the court must go

beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary

to a ruling upon the motion to dismiss." *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018)

(internal quotation marks omitted) (quoting *Phoenix Consulting v. Republic of Angola*, 216 F.3d

36, 40 (D.C. Cir. 2000)).  The plaintiff must then prove jurisdiction by preponderance of the

evidence.  *E.g.*, *Coleman v. Toyota Motor Credit Corp.*, 109 F. Supp. 3d 4, 6 (D.D.C. 2015).

## II.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* (citing *Twombly*, 550 U.S. at 556).  Courts need not accept a plaintiff's conclusory allegations

and legal conclusions as true.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678–79.  But they

may credit facts gleaned from "documents either attached to or incorporated in the complaint and

matters of which [a court] may take judicial notice."  *Trudeau v. Fed. Trade Comm'n*, 456 F.3d

178, 183 (D.C. Cir. 2006) (citation and quotations omitted).

## ARGUMENT

## I.    The Court Lacks Jurisdiction.

### A.    *Rooker-Feldman* Bars Plaintiff's Claims.

At bottom, Plaintiff's Complaint—whether construed as one on behalf of her uncle,

herself, or both—arises from a general dissatisfaction with the Superior Court guardianship

process and the conduct of her uncle's court-appoint guardian, Ms. Hom.  This Court, however, lacks subject jurisdiction over those grievances, all of which arise out of and were (or could have been) raised in the Superior Court guardianship proceedings.  To be sure, "[t]he *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by state court losers challenging state-court judgments rendered before the district court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curiam) (cleaned up).  In addition to barring the review of decided issues, *Rooker-Feldman* also bars lower federal court review of issues "inextricably intertwined" with a state court's order.  *Feldman*, 460 U.S. at 483 n.16.  A "federal claim is inextricably intertwined with the state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Ananiev v. Freitas*, 37 F. Supp. 3d 297, 312 (D.D.C. 2014), *aff'd*, 587 F. App'x 661 (D.C. Cir. 2014).  Courts in this district routinely employ *Rooker-Feldman* to dispose of constitutional challenges arising out of Superior Court proceedings.  *E.g.*, *Henneghan v. Trafford*, 2024 WL 3471260, at *5–6 (D.D.C., July 18, 2024); *Rowland v. Superior Ct. Bldg. B*, 2014 WL 1321106, at *1 (D.D.C. Mar. 20, 2014); *Moorman v. U.S. Bank, NA*, 2010 WL 2884661, at *1 (D.D.C. July 10, 2010); *Fleming v. U.S.*, 847 F. Supp. 170, 172 (D.D.C. 1994), *aff'd* 1994 WL 474995 (D.C. Cir. 1994), *cert. denied*, 513 U.S. 1150 (1995).  And federal circuit courts have reinforced that it clearly applies to state court guardianship matters.  *E.g.*, *Scully v. Goldenson*, 751 Fed. App'x 905, 908 (7th Cir. 2018) (citing *Struck v. Cook Cty. Pub. Guardian*, 508 F.3d 858, 859 (7th Cir. 2007) (Posner, J.)).

Here, Plaintiff's Complaint falls squarely within what *Rooker-Feldman* prohibits.  The Superior Court clearly rejected Plaintiff's challenge to Ms. Hom's guardianship, including on the basis of her allegations concerning her uncle's health care, the management of his affairs, and his

alleged desire for different housing. *Compare* Removal Petition, *with* Removal Order at 2 (denying removal petition). That decision was affirmed by the DCCA. DCCA Order at 2–3. And while the Superior Court has not squarely decided Plaintiff's federal damages claims, each one is intertwined with the judgments entered in the guardianship proceedings because they succeed "only to the extent that the state court wrongly decided" either the 2021 petition appointing a guardian for Mr. Holton or Plaintiff's more recent petition to remove Ms. Hom—or both. *Ananiev*, 37 F. Supp. 3d at 312 ("'if a suit seeking damages for the execution of a judicial order is just a way to contest the order itself, then the *Rooker-Feldman* doctrine is in play.'" (quoting *Homola v. McNamara*, 59 F.3d 647, 651 (7th Cir. 1995)). Accordingly, the Court lacks jurisdiction over Plaintiff's entire Complaint and should dismiss the action pursuant to Rule 12(b)(1).

### B.  **Plaintiff Does Not Have Standing To Sue on Her Uncle's Behalf.**

Plaintiff purports to bring this action on behalf of herself and her uncle, Mr. Holton. Compl. ¶¶ 1, 27. To support her standing to sue for her uncle, Plaintiff contends that she is "the best available proponent [for him]," Compl. ¶ 28, because she has a "close relationship with [him]," is an "interested person to the guardianship proceedings," and is his "durable Power of Attorney," Compl. ¶¶ 44, 68, 83. Plaintiff's attempt to serve as her uncle's stand-in is faulty in two obvious respects. *First*, District guardianship law confers broad decision making authority on Ms. Hom, not Plaintiff, foreclosing the possibility that Plaintiff could serve as her uncle's representative in this (or any other) court proceeding. *Second*, and relatedly, even if local substantive law was no barrier, Plaintiff cannot establish at least the close-relationship element necessary for third-party standing.

Start with local law.  Under the District's guardianship statute, a general guardian like Ms. Hom is charged with broad responsibility over the care, custody, and control of Mr. Holton and his affairs.  D.C. Code § 21-2047.  That includes, among numerous others, the duty of general substitute decision making for Mr. Holton and the right to "[i]nstitute proceedings" on his behalf.  D.C. Code § 21-2047(a)(6), (b)(3).  Indeed, although not squarely deciding the issue, the DCCA has recently hinted that, where a general guardian is appointed, she alone is the real party in interest to claims on behalf of the ward she represents.  *See L.S. v. D.C. Dep't on Disability Servs.*, 285 A.2d 165, 171 (D.C. 2022) (quoting Second Circuit precedent, in turn quoting 6A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1548, at 372 (2d ed. 1990), for the proposition that "State substantive law usually provides that the general guardian of an incompetent [person] has the legal right to maintain an action in her own name for the benefit of her ward and is the real party in interest" (cleaned up, bracketed text added)).  Consistent with this principle, at the time the Superior Court appointed Ms. Hom as Mr. Holton's guardian, it simultaneously vacated the current power of attorney for Holton in favor of Hom's substitute decision making.  Guardianship Order at 7 ("The current power of attorney for the ward is hereby vacated.").  The upshot is that Ms. Hom alone is charged with the authority to sue on Mr. Holton's behalf; Plaintiff is not so authorized, so the Court cannot entertain her suit for Mr. Holton.  *Cf. Struck*, 508 F.3d at 859 ("plaintiff is not his mother's guardian and therefore is not authorized to sue on her behalf").

Nor could Plaintiff otherwise satisfy third-party standing doctrine.  Generally, a party "must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties."  *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004) (internal citation omitted).  To bring an action on behalf of a third party, the litigant must: (1) have

suffered an injury in fact, thus giving her a sufficiently concrete interest in the outcome of the issue in dispute; (2) have a close relationship to the third party; and (3) demonstrate some hindrance to the third party's ability to protect his or her own interests. *Powers v. Ohio*, 499 U.S. 400, 411 (1991). Here, Plaintiff has not (and presumably cannot) establish at least the second—close relationship—prong of the standard. To be sure, Plaintiff *alleges* that she and her uncle are "close" and that she is "the best available proponent [for him]," Compl. ¶¶ 28, 44, 68, 83; but those representations are plainly conclusory, *Gulf Coast Mar. Supply, Inc.*, 867 F.3d at 128. In reality, Plaintiff bears the burden to *prove* that her interests are so closely aligned with her uncle's that she is "fully, or very nearly, as effective a proponent of [his] rights as [he would be]." *Powers*, 499 U.S. at 411 (citation omitted). Proximity on the family tree is not sufficient. *E.g.*, *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 998 (8th Cir. 2016). And the Superior Court record leaves serious doubt about the nature of Plaintiff's interests. *E.g.*, Compl. ¶¶ 23, 58 (describing "series of orders" restricting Plaintiff's access to Holton); Removal Order at 2 ("the Court has substantial concerns regarding Ms. Brunson's actions as she appears motivated by Mr. Holton's assets rather than his best interest."). Finally, to the extent there is any dispute over the significance of the power of attorney Plaintiff claims to hold—or, more generally, over who Mr. Holton would have as the proponent of his legal interests—this Court has no jurisdiction to reach the issue: The Superior Court expressly found that "Mr. Holton . . . does not want [Plaintiff] to be involved in his decision making," Removal Order at 2, and *Rooker-Feldman* bars relitigation of that issue here, *see supra* at 6–7.[3]

---

[3]     Further, despite repeating the allegation several times, it is difficult to imagine that Plaintiff holds a *valid* power of attorney for her uncle. As noted, the Superior Court vacated the existing power of attorney for Holton when it appointed Ms. Hom as Holton's guardian in February 2021, Guardianship Order at 7 ("The current power of attorney for the ward is hereby vacated."); and because Holton was determined to be incapacitated at the time, he would not

## II.    The Complaint Fails To State a Claim.

Even if (or to the extent that) the Court assumes jurisdiction, Plaintiff's Complaint fails to state a claim such that it should be dismissed pursuant to Rule 12(b)(6).  As noted, Plaintiff brings three substantive claims against the District—for alleged violations of procedural and substantive due process (Counts I and II, respectively) and equal protection (Count III)—under 42 U.S.C. § 1983.  Section 1983, however, does not allow *respondeat superior* liability.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Rather, under *Monell*, "D.C. is liable only if a city policy or practice causes an injury. . . .  So to state a valid claim, [Plaintiff] need[s] to plausibly allege that the government itself, as an institution, was the 'the moving force behind the violation' of her federal rights."  *Givens v. Bowser*, 111 F.4th 117, 122 (D.C. Cir. 2024) (internal citation omitted; quoting *Frederick Douglass Foundation, Inc. v. District of Columbia*, 82 F.4th 1122, 1136 (D.C. Cir. 2023)).  Plaintiff has fully failed this independent hurdle—and even if she had cleared it, she has not plausibly alleged a predicate violation of any constitutional provision listed in her Complaint.

### A.    Plaintiff Does Not Plead a Plausible Basis for *Monell* Liability.

First, apply *Monell*.  Even a generous review of the Complaint, reveals that Plaintiff is only challenging two broad categories of actions:  Alleged neglect of her uncle by Ms. Hom, and a series of judicial actions (or inactions) by Superior Court judges in the context of her uncle's guardianship proceedings.  As to the first, Ms. Hom is not an employee or agent of the District, assuming her actions qualify as state action at all, *e.g.*, *Kirtley v. Rainey*, 326 F.3d 1088, 1096 (9th Cir. 2003) (guardian ad litem's role does not constitute state action), and assuming further

---

have the legal capacity to enter into a different power of attorney after that date, even assuming it is theoretically possible under District guardianship law, *cf. Hernandez v. Banks*, 65 A.3d 59, 67–68 (D.C. 2013).

she does not have immunity for some or all of her conduct, *e.g.*, *Arntz v. Smith*, 1994 WL 474998, at *1–2 (D.C. Cir., July 1, 1994) (guardian and conservator immune from suit for damages resulting from quasi-judicial activities).  Nor is there any creditable suggestion that Hom acted pursuant to municipal policy; to the contrary, if Hom is neglecting her duties as Plaintiff contends (the District in no way suggests that she is), Hom would be acting *in*consistent with municipal policy, as stated in D.C. Code § 21-2047, *et seq*.  Plaintiff's allegations concerning the conduct of Superior Court judges—or, as stated alternatively in the Complaint, unnamed "District officials," Compl. ¶¶ 53, 63, 75, 77–78—hardly fair better.  The judges themselves enjoy absolute immunity for their decisions to appoint a guardian for Plaintiff's uncle, *E.g.*, Compl. ¶¶ 53, 75; to provide for notice of the guardianship proceedings to interested parties, Compl. ¶¶ 30, 36–37; to restrict Plaintiff's access to her uncle, Compl. ¶¶ 23, 58, 63; and to deny Plaintiff's petition to remove Ms. Hom, Compl. ¶¶ 59–62.  *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993) (citing *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) for the proposition that "[j]udges enjoy absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless the[ ] actions are taken in the complete absence of all jurisdiction.").  And to the extent Plaintiff attempts to connect those actions to municipal policy, she does so only with conclusory allegations.  *E.g.*, Compl. ¶¶ 41 ("District of Columbia knows or should have known . . ."), 64 (same), 80 (same), 42 ("[D.C.] does not have adequate statutory protections to curb unconstitutional adjudications"), 65–66 (similar), 81 (similar).  "[E]ven in light of the sympathetic pleading requirements applicable to pro se [litigants]," Plaintiff's "bald accusation[s]" of indifference and/or unconstitutional government policy or practice are insufficient to establish municipal liability under the requisite standard. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981).

### B. **Plaintiff's Constitutional Claims Fail on the Merits.**

#### 1. The Procedural Due Process Claim Fails.

Procedural due process requires that the government provide notice and an opportunity to be heard before depriving a person of a protected liberty or property interest. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). In Count I, Plaintiff alleges that she suffered a procedural due process violation when the District failed to notify her of her uncle's guardianship proceedings, first in 2019, when he was "adjudicated incapacitated," and again in 2021, when the Superior Court appointed Ms. Hom to serve as his guardian. Compl. ¶¶ 30, 36–37. Plaintiff's procedural due process theory, then, is that the District owed *her* constitutionally adequate notice of its intent to commence guardianship proceedings that would eventually result in curtailment of *her uncle's* liberty. Compl. ¶ 30 ("My uncle's liberty interest was unjustifiably taken . . ."). But that is not how due process works: The Constitution requires that pre-deprivation process—notice in particular—be afforded to persons "whose *legally protected* interests are *directly* affected by the proceedings in question." *Schroeder v. New York*, 371 U.S. 208, 212–213 (1962) (emphasis added). Plaintiff, however, did not have any legally protected or direct interest—at least none that she alleges—in her uncle's 2019–2021 guardianship proceedings. *Cf.* D.C. Code § 21-2042(a) (listing individuals to whom notice of guardianship proceedings "shall be given").[4] Indeed, according to her, from at least September 2018 until "around 2022," she had no contact at all with her uncle. Compl. ¶¶ 9–15. Accordingly, Count I of the Complaint fails to state a claim.

---

[4] To the extent Plaintiff is claiming that she has an interested protected by D.C. Code § 21-2042(a), her procedural due process claim is barred by *Parratt-Hudson*, which holds that random departures from state-prescribed procedures do not generally constitute actionable due process violations. *E.g.*, *Doe by Fein v. District of Columbia*, 93 F.3d 861, 869 (D.C. Cir. 1996).

2.  **The Substantive Due Process Claim Fails.**

Count II of the Complaint alleges violations of Plaintiff—and her uncle's—right to substantive due process.  Compl. ¶¶ 48–71.  To state a substantive due process claim, Plaintiff must clear two hurdles:  She must first demonstrate that the District deprived her of a fundamental right or protected liberty or property interest, *George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 206 (D.C. Cir. 2003); then, she must show that the deprivation was "arbitrary in the constitutional sense," *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotation marks and citation omitted).  At the second step, she must point to facts that, if true, reveal state action that was "so egregious[ and] so outrageous[ ] that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n.8.  Plaintiff's substantive due process claim fails at step one; her uncle's fails at step two.

i.   Plaintiff's Substantive Due Process Claim

Although no model of clarity, Plaintiff's substantive due process claim (on her own behalf) appears to arise out of the Superior Court's entry of orders restricting Plaintiff's access to her uncle, Compl. ¶¶ 58 n.2 ("restricting access to my uncle"), 63 ("orders restricting me from addressing my uncle's needs"); and declining to remove Ms. Hom as her uncle's guardian, Compl. ¶¶ 61, 66 (alternatively, failing "to insulate [Plaintiff] from bad faith conduct of [ ] court-appointed officers").  In other words, she challenges judicial decision making in the context of *her uncle's* guardianship proceeding.  There is no law of which the District is aware suggesting that Plaintiff has a fundamental right to "access" her uncle or opine on the management of his affairs; and, as explained above, she has no protected property or liberty interest in *his* guardianship.

ii.  Mr. Holton's Substantive Due Process Claim

Mr. Holton's substantive due process claim reduces to his contention (or rather, Plaintiff's characterization of Holton's contention) that Ms. Hom is not ensuring that his medical needs are adequately met, that his "wishes" are respected, and that his affairs are appropriately managed.  Compl. ¶¶ 51–52, 55–57.  That is, Holton's claim is precisely what was litigated in his guardianship matter between July 2023, when Plaintiff filed her petition seeking Hom's removal, and November 2024, when the DCCA affirmed the trial court's denial of Plaintiff's petition.  Yet that judicial process itself demonstrates how Holton's liberty was not constrained in any constitutionally arbitrary way:  Upon the filing of Plaintiff's petition, the Superior Court entertained full briefing, held two evidentiary hearings, and received testimony from "three individuals who were designated as experts," Removal Order at 2; Holton was represented by Hom as well as a court-appointed attorney, *id.* at 1; and based on the evidence before it, the court determined that Holton "d[id] not have the capacity make decisions in his best interests regarding his finances, healthcare, or housing," and that there was "no admitted evidence that [he] was unsatisfied with Ms. Hom's performance as Guardian, *id.* at 2.  That was then reviewed by a three-judge panel at the DCCA, which upheld the trial court's determination on an abuse of discretion standard after a second round of briefing and oral argument.  DCCA Order at 2–3.  Far from being arbitrary, the local courts acted deliberately and with due regard for Holton's liberty interests.  That Holton (or more accurately, Plaintiff) would have things come out differently does not convert clearly rational government decision making into actionable—conscience-shocking—conduct.  And the Complaint's formulaic statements regarding "indifference," "neglect[ ]," and the like are only conclusions that this Court cannot credit.  *Twombly*, 550 U.S. at 555; *accord Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (in evaluating a substantive due process claim court must "focus on the allegations in the complaint to determine

how the [the plaintiff] describes the constitutional right at stake and what the city allegedly did to deprive her [ ] of that right.").

### 3.  The Equal Protection Claim Fails.

Count III of the Complaint asserts an equal protection claim on behalf of at least Mr. Holton.  Compl. ¶¶ 72–86.[5]  The Complaint does not situate Holton within a "protected class" or "identified group," and thus his equal protection challenge must proceed on a class-of-one theory.  *Willowbrook v. Olech*, 528 U.S. 562, 563–64 (2000).  To state a class-of-one equal protection claim, Holton must demonstrate intentional differential treatment of similarly situated parties without a rational basis.  *See id.* at 564.  Both elements are "essential," such that the absence of either is grounds for dismissal.  *3883 Conn. LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003).  Yet the Complaint's allegations fail to show both:  Plaintiff pleads—formulaically—that "[her] uncle is being treated differently than similarly situated persons alleged to be incapacitated," but she offers no *facts* to describe either the comparator group or the alleged differential treatment.  That, without more, is fatal to Holton's equal protection claim.  *Cf. Tate v. District of Columbia*, 627 F.3d 904, 910 (D.C. Cir. 2010) (affirming dismissal of plaintiff's class-of-one claim any similarly situated person [with comparable relevant circumstances] who was treated differently").

### CONCLUSION

For these reasons, the Court should dismiss the Complaint pursuant to Rule 12(b)(1) and/or (6).

Date: April 1, 2025.                                  Respectfully submitted,

---

[5]    To the extent Plaintiff also asserts an equal protection claim on her own behalf, it is an unserious attempt.  *See* Compl. ¶ 78.  Plaintiff does not even try to identify a protected class or comparator for her claim; nor does she describe differential treatment *of her*, only repeating her allegations related to lack of notice.  *Compare* Compl. ¶¶ 30, 36–37, *with* Compl. ¶ 78.

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

/s/ Matthew R. Blecher
MATTHEW R. BLECHER [1012957]
Chief, Equity Section, Civil Litigation Division

/s/ Honey Morton
HONEY MORTON [1019878]
Assistant Chief, Equity Section

/s/ Julie Tolmie
JULIE TOLMIE*
Assistant Attorney General
Equity Section, Civil Litigation Division
400 6th Street, N.W.
Washington, D.C. 20001
Phone: (202) 285-2167
Email: julie.tolmie@dc.gov

Counsel for Defendant

*Counsel is a member in good standing of the
Oregon State Bar, authorized by the Office of
the Attorney General for the District of
Columbia to provide legal services pursuant to
Local Civil Rule 83.2(g). Counsel certifies that
she is personally familiar with the Local Rules
of this Court as well as the other materials set
forth in Local Civil Rules 83.8(b) and 83.9(a).

16

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ANGELA BRUNSON,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**FRANCES HOM, et al.,**<br><br>    **Defendants.** | **Case No.  1:24-cv-03382-RDM** |

## ORDER

Upon consideration of Defendant District of Columbia's Motion to Dismiss, and the entire record, it is:

**ORDERED** that Defendants' Motion is **GRANTED**; and it is further

**ORDERED** that the Complaint is **DISMISSED**.

**SO ORDERED.**

Date: _____

_____
RANDOLPH D. MOSS
United States District Judge